**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **WILLIAM HERBERT VILLAR** : | |
| **AIS # 245066** : | |
| : | |
| **Petitioner,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 08-00082-CG-B** |
| : | |
| **GRANTT CULLIVER,** : | |
| : | |
| **Respondent.** : | |

**REPORT AND RECOMMENDATION**

William Herbert Villar, a state prisoner currently in the custody of Respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner challenges the validity of his 2005 convictions in the Circuit Court of Mobile County, Alabama, for second degree rape, second degree sodomy, enticing a minor to enter a vehicle, intimidating a witness, and criminal solicitation to commit murder, for which he was sentenced to concurrent terms of ten years each, with the exception of his conviction for solicitation to commit murder, for which he was given a life sentence to be served concurrently with the other sentences. (Doc. 1 at 2; Doc. 25 at 2; Doc. 25, Att. 3 at 160-61, 165-66).

This matter is now before the undersigned Magistrate Judge on Petitioner's petition and supplements thereto, Respondent's answer and amendment thereto, briefs, responses, and exhibits filed by the parties, the state court records, various state court briefs filed

by the parties, and opinions and orders of the state trial and appellate courts. Following a careful review of the petition and record, the undersigned finds that an evidentiary hearing is not warranted on the issues.[1]  See 28 U.S.C. § 2254(e)(2).

---

[1]Because Petitioner filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required."  Kelley v. Secretary for Dep't of Corrs., 377 F.3d 1317, 1337 (11th Cir. 2004).  The legal standard for determining when an evidentiary hearing in a habeas corpus case is allowed is articulated in 28 U.S.C. § 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner has failed to establish that an evidentiary hearing is warranted in this case.

The Alabama Court of Criminal Appeals found the facts of this case to be as follows:[2]

> The appellant, William Herbert Villar, was convicted of one count of second-degree rape, a violation of § 13A-6-62, Ala. Code 1975; one count of second-degree sodomy, a violation of § 13A-6-63, Ala. Code 1975; one count of enticing a child to enter a motor vehicle for immoral purposes, a violation of § 13A-6-69, Ala. Code 1975; one count of intimidating a witness, a violation of § 13A-10-123, Ala. Code 1975; and one count of solicitation to commit murder, a violation of § 13A-4-1, Ala. Code 1975. He was sentenced to life imprisonment for his solicitation to commit murder conviction and to a term of 10 years' imprisonment for each of his second-degree rape and second-degree sodomy convictions; the sentences were ordered to run concurrently. Additionally, Villar was sentenced to a term of 10 years' imprisonment for his intimidating a witness conviction and to a term of 10 years' imprisonment for his enticing a child to enter a vehicle for immoral purposes; these sentences were ordered to run concurrently with Villar's earlier sentences. Villar was ordered to pay a $50 crime victims compensation fund assessment and $250 in attorneys fees.
>
> The evidence established that in the fall of 2003, 12-year-old J.N.H. began communicating with the appellant, William Herbert Villar, over the internet. They communicated on a regular basis. On one occasion, Villar picked

---

[2]AEDPA directs that a presumption of correctness be afforded factual findings of state courts, "which may be rebutted only by clear and convincing evidence." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Id. (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

J.N.H. up from her house in his red Pontiac Trans-Am; the passenger seat of the car was lowered "all the way back." J.N.H. testified that, as Villar drove her to an unidentified location, he threatened to burn her house and harm her family if she did not cooperate with his wishes. Villar suggested that he wanted to have intercourse with J.N.H.; however, she told him "no." Ignoring her response, Villar pulled her pants off and put his penis into her vagina. Before driving her back to her home, Villar told J.N.H. not to tell anyone what had happened that night. As instructed, J.N.H. told no one what had happened.

Over the next few months, J.N.H. maintained contact with Villar. She talked to Villar on the telephone. Additionally, Villar would come to her house and pick her up in his car, with J.N.H. sneaking out via a hole in the back fence that Villar had created. On occasion, Villar would take J.N.H. to his house where, according to J.N.H., after threatening to kill her family and friends, he would make her perform fellatio.

In April 2004, Villar called J.N.H.'s mother, pretending to be someone else. He accused J.N.H. and her cousin of picking up his son to do drugs "across the Bay." Because J.N.H.'s mother knew that her daughter had been in that vicinity, and because of the details outlined by the caller, she believed the caller's accusation to be credible. As a result of the telephone call, J.N.H. was disciplined by her grandmother, who had custody of her. J.N.H.'s grandmother later called J.N.H.'s mother at work to tell her that J.N.H. was missing. Based on the telephone call she had received from the strange man earlier and J.N.H.'s disappearance, J.N.H.'s mother took her daughter's school picture to a local photocopy establishment and printed missing person flyers to distribute around the neighborhood. J.N.H.'s mother also called the police and reported that her daughter had disappeared.

During the course of their investigation,

Lieutenant Victor Vaughn and Detective Troy Faulk of the Mobile Police Department visited Villar at his residence. Lieutenant Vaughn showed Villar a copy of the missing person flyer and asked Villar if he knew the girl. Villar stated that he did not know the girl. Before the officers left, however, Villar stated that he might have seen her near an intersection on University Avenue. He told the officers that he would contact police if he saw her again. The officers left their business cards and several telephone numbers where Villar could contact them if he heard from J.N.H.

The next day, Villar called the officers and told them that he was traveling throughout southeast Alabama "trying to get his head together" without further detail as to why he needed to do so. After several similar conversations during which Villar was driving around in Louisiana, Mississippi, and Alabama, Lieutenant Vaughn asked Villar if he was ready to come back to Mobile so that they could talk. Villar indicated that he was not yet ready to do that.

According to J.N.H., she was with Villar during this period of time. He had picked her up at the Home Builders Association located behind her house. Because her grandmother was mad at her, J.N.H. gathered clothing and compact discs from her room, placed them in a bag, and met Villar at the hole in the back fence. Villar took J.N.H. to his house and they had sexual intercourse and oral sex. While J.N.H. was at his house, Villar cut J.N.H.'s hair and dyed it auburn. When Villar's employer called informing him that the police were looking for him, Villar ordered J.N.H. to pack her belongings and drove her in a blue truck to a travel trailer near Dauphin Island. He left her there with a cooler containing food and drinks, and told her not to leave the trailer. J.N.H. did as she was instructed. Also, as instructed, she destroyed her purse.

Two days later, Villar returned to the
trailer. J.N.H. gathered up her belongings
and the two set out for Louisiana in a
Chevrolet Astro van. Villar told J.N.H. that
they were going to New Orleans, but they ended
up stopping at a Motel 6 in Slidell.

Investigating officers eventually learned of
Villar's location from Villar's son, who had
called them, indicating he feared that his
father was going to commit suicide. Mobile
police officers traveled to the Motel 6 in
Slidell, where they were assisted by officers
from the Slidell Police Department and SWAT
team. When the Slidell police forced their
way into the hotel room, they saw Villar lying
on one of the hotel beds with his hands spread
out. J.N.H. was sitting on the bed closet to
the door screaming and crying. Officers
removed J.N.H. from the room and called
paramedics to render medical assistance to
Villar. Villar repeatedly told the officer
that it was his intention to bring the girl
back to Mobile. Slidell police officers
arrested Villar and charged him with the
offense of contributing to the delinquency of
a minor. He was later taken into custody by
the Mobile Police Department. J.N.H.
submitted to a medical examination. Dr. John
Shriner testified that he found a tear in her
hymen consistent with a penetrating object
entering her vagina. Because J.N.H. and
Villar had not engaged in intercourse for a
number of days, no semen collection was
attempted.

While at the Mobile Metro Jail, Villar spoke
with his son, Michael Villar, and his son's
friend, Michael "Red" Phillips, by telephone
on numerous occasions. Many of these
telephone conversations were audiotaped and
they were admitted as evidence at trial.
According to Michael and Phillips, Villar
requested that they call J.N.H.'s family and
"work out a deal to keep them from
testifying." Phillips telephoned J.N.H.'s
residence and spoke with J.N.H.'s mother.
Phillips told her that he had over 200 nude

photographs of J.N.H., and he threatened to embarrass J.N.H. and her family by showing the photographs if the charges were not dropped. Undaunted, J.N.H.'s mother told Phillips to "come on over" with the photographs. Phillips testified that at that point he did not feel right about making the call and hung up.

On another occasion, according to the young men, Villar asked his son and Phillips to pour gasoline around the house and set it on fire with all of the family members inside. Michael Villar and Phillips were shocked that Villar's requests had become more hostile and agreed that they would not comply with this request. However, they told Villar that they would do it because he had threatened to commit suicide if he could not get out of jail.

In the telephone conversations that [were] audiotaped, Villar never specifically referred to burning J.N.H.'s house down; rather, he used such phrases as "going to another level," "other stage," and "extremities." Michael Villar interpreted those phrases to mean burning down J.N.H.'s house.

While Villar was in the Mobile Metro Jail, Lieutenant Nina Gordon discovered some digging around the concrete blocks in an exterior wall of Villar's cell, as well as a hand-fashioned shiv made from the metal component of a squeeze mop, leading her to conclude that Villar had attempted to escape.

(Doc. 7, Att. 1at 1-5) (footnote omitted).

In addition to the foregoing statement of facts, the record reflects that, at the time that Petitioner began communicating with twelve-year-old J.N.H., he was fifty-two years old. (Doc. 25, Att. 3 at 49-50). During their internet communication in the fall of 2003, J.N.H. told Petitioner where she went to church, and

Petitioner appeared there on more than one occasion and sat a couple of pews in front of her, which frightened her. (Doc. 25, Att. 2 at 30-31). Eventually, Petitioner convinced J.N.H. to sneak out of her house and go riding with him in his "red Trans Am," whereupon he raped her. (<u>Id.</u> at 5-7). When the police arrested Petitioner at a hotel in Louisiana with J.N.H. on April 20, 2004, she had been missing for eleven days. (Doc. 25, Att. 1 at 5; Doc. 25, Att. 2 at 107-10; Doc. 25, att. 3 at 47).

On November 28, 2005, Petitioner was tried in the Circuit Court of Mobile County, Alabama, and convicted of second degree rape, second degree sodomy, enticing a minor to enter a vehicle, intimidating a witness, and criminal solicitation to commit murder.[3] (Doc. 25, Att. 1 at 8; Doc. 25, Att. 3 at 142-43). On January 24, 2006, Petitioner filed a motion for a new trial, which the trial court denied. (Doc. 25, Att. 1 at 9). Petitioner then filed a notice of appeal to the Alabama Court of Criminal Appeals, which affirmed his convictions on August 11, 2006, in an unpublished memorandum opinion. (<u>Id.</u> at 104; Doc. 7, Att. 1). On September 1, 2006, the court overruled Petitioner's application for rehearing. (Doc. 7, Att. 2). Petitioner filed a petition for a writ of certiorari with the Alabama Supreme Court, which the court

---

[3] Petitioner was also tried on one count of second degree escape, a violation of § 13A-10-32, Ala. Code 1975, and the jury returned a verdict of not guilty on that count. (Doc. 25, Att. 3 at 143).

denied on February 9, 2007, issuing a certificate of judgment on that date. (Doc. 7, Att. 3).

On May 22, 2007, Petitioner filed a petition for post-conviction relief, *pro se*, pursuant to Rule 32 of the <u>Alabama Rules of Criminal Procedure</u>. (Doc. 7, Att. 5 at 1). On January 7, 2008, the court denied the petition, and Petitioner appealed the denial to the Alabama Court of Criminal Appeals on February 5, 2008. (<u>Id.</u> at 2). That appeal is still pending.

On February 8, 2008, Petitioner filed the instant petition for a writ of habeas corpus setting forth four claims in support of his request for habeas relief. (Doc. 1). Petitioner subsequently filed a motion to dismiss two of his habeas claims, which the Court granted, leaving the following two claims: (1) there was insufficient evidence to support Petitioner's conviction for solicitation to commit murder ("Claim 1"); and (2) Petitioner's due process rights were violated by the improper consolidation of six charges at trial and by the improper admission of a missing persons poster into evidence ("Claim 2"). (Doc. 1 at 7-8; Doc. 8; Doc. 22). On March 25, 2008, Respondent filed an Answer to the petition and, on February 12, 2009, Respondent filed an Amended Answer, to which Petitioner filed various responses. (Docs. 7, 9, 10, 11, 12, 14, 16, 25, 27, 28). The Court will now consider each of Petitioner's claims in turn.

## DISCUSSION

Respondent asserts in his Amended Answer that Petitioner has failed to properly exhaust Claim 2 in the state courts and that the state courts, in any event, denied relief on Claims 1 and 2 on the merits. (Doc. 25 at 10-12). For the reasons set forth below, the Court finds that Petitioner is not entitled to habeas relief on the basis of either Claim 1 or Claim 2.

## I. **Claim 1**.

Petitioner argues first in his petition that he is entitled to relief under § 2254 based on the insufficiency of the evidence to support his conviction for solicitation to commit murder. (Doc. 1 at 7). Respondent asserts that this claim was raised in the state courts and denied on the merits.

28 U.S.C. § 2254(d) provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. In Williams v. Taylor, 529 U.S. 362, 412 (2000), Justice

O'Connor, writing for a majority of the Court, recognized that "§ 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."

> A state-court decision is contrary to the Supreme Court's clearly established precedent (1) if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 1519-20, 146 L. Ed. 2d 389 (2000).

> A state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Williams</u>, 120 S. Ct. at 1520. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u>

<u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000). Moreover, the Act, as amended, presumes as correct all determinations of factual issues made by a state court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

Petitioner claims that the evidence in support of his conviction for solicitation to commit murder was insufficient because there was no corroboration of the solicitees' testimony, as required by Alabama law. Petitioner presented this same argument to the Alabama Court of Criminal Appeals on direct appeal, and, in its memorandum opinion affirming his conviction, the court stated:

> Villar argues that the trial court erred when it denied his motion for judgment of acquittal because, he says, the State failed to present sufficient evidence to support his conviction for solicitation to commit murder. Specifically, he argues that there was insufficient evidence to corroborate the testimony of his son Michael Villar and Michael "Red" Phillips.
>
> Section 13A-4-1, Ala. Code 1975, provides:
>
>> "(a) A person is guilty of criminal solicitation if, with the intent that another person engage in conduct constituting a crime, he solicits, requests, commands or importunes such other person to engage in such conduct.
>>
>> "A person may not be convicted of criminal solicitation upon the uncorroborated testimony of the person allegedly solicited, and there must be proof of circumstances corroborating both the solicitation and the defendant's intent."
>
> We have held that, although corroboration of the solicitation and the Defendant's intent are required, the corroborating evidence may be circumstantial. <u>Thornton v. State</u>, 570 So. 2d 762, 769 (Ala. Crim. App. 1990). There was sufficient corroboration presented in this case. Michael Villar and Michael "Red" Phillips testified that Villar asked them to

burn down the house of the family of the victim, J.N.H., while her family was inside. The audiotapes of telephone communications between the appellant and his accomplices while at the Mobile Metro Jail corroborated both Villar's intent and the solicitation.

As this Court explained in <u>Kimbrough v. State</u>, 544 So. 2d 177 (Ala. Crim. App. 1989), given the requisite intent, the crime is in the communication to another to commit the offense; no resulting action by the person being solicited is necessary. The offense is complete when the solicitation is made; it does not matter that the offense is never accomplished or that no overt act toward accomplishment of the solicited offense is made. Accordingly, the State was not required to corroborate the testimony of Michael Villar and Michael "Red" Phillips with independent evidence that would prove the criminal solicitation beyond a reason doubt; rather, the State had the burden of presenting such other evidence that would connect Villar with to (sic) the criminal solicitation and tend to show that Villar was serious about his son and Red carrying out the requested crime. See <u>Thornton v. State</u>, 570 So. 2d at 769.

Here Michael Villar and Red Phillips testified that the appellant solicited them to commit murder – specifically, he asked the young men to burn J.N.H.'s family's house down with the family inside. Although these specific "words" were not memorialized on the audiotaped telephone call from jail, Villar used a form of "code" to express his wishes. Villar referenced "mail[ing] another letter," "go[ing] to that other stage," "extremities," and "tak[ing] it to the next level." He also asked his son if "this is going to end on a peaceful note" and at one point made a comment referencing "kill or be killed." In context, the phrases clearly reference killing J.N.H. and her family.

The jury was entitled to disbelieve Villar's futile attempts to explain that his

conversation related to his pending court date
and his divorce from his wife. His comments
to his son and Phillips were an effort to plan
the murder of J.N.H. and her family. "The
weight and probative value to be given to the
evidence, the credibility of the witnesses,
the resolution of conflicting testimony, and
inferences to be drawn from the evidence are
for the jury." Smith v. State, 698 So. 2d
189, 214 (Ala. Crim. App. 1996). We will not
invade the province of the jury and reweigh
the evidence. Thus, the evidence was
sufficient to corroborate Michael Villar and
Phillips's testimony that Villar asked them to
burn down J.N.H.'s house with her family
inside.

(Doc. 7, Att. 1 at 5-7).

On habeas review of the sufficiency of the evidence to support

a criminal conviction, the critical inquiry is "whether the

evidence could reasonably support a finding of guilt beyond a

reasonable doubt." Wilson v. Hooks, 2009 WL 3003964, *10 (M.D.

Ala. 2009).

> [T]his inquiry does not require a court to
> "ask itself whether it believes that the
> evidence at the trial established guilt
> beyond a reasonable doubt." Woodby v. INS,
> 385 U.S., at 282, 87 S. Ct., at 486 (emphasis
> added). Instead, the relevant question is
> whether, after viewing the evidence in the
> light most favorable to the prosecution, any
> rational trier of fact could have found the
> essential elements of the crime beyond a
> reasonable doubt.

Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).

Having thoroughly reviewed the record in this matter, the

Court is satisfied that a rational trier of fact could have found

the essential elements of the crime of solicitation to commit

14

murder beyond a reasonable doubt. In addition to the evidence cited by the Alabama Court of Criminal Appeals in its opinion, the record shows that the twelve-year-old victim, J.N.H., testified that, when the Petitioner raped her the first time in the fall of 2003, he told her that he would burn her house down with her family in it if she "didn't do what he said." (Doc. 25, Att. 2 at 6-7). Then, when he took her from her home in the spring of 2004 and kept her for eleven days, she did not run away or seek help because he told her that he would kill her and her family. (Id. at 32). Finally, Petitioner called J.N.H. from jail and threatened to burn her house down and kill her family if she did not drop the charges against him. (Id. at 28). This evidence, along with the audiotape evidence and Villar's own testimony from the stand[4] fully corroborates the solicitees' testimony that Petitioner instructed them to murder J.N.H. and her family, and he intended that J.N.H. and her family be killed.[5]

---

[4] At trial, Petitioner admitted that he used phrases such as "let's go to another level" and "kill or be killed" in telephone conversations with his son and Michael Phillips. (Doc. 25, Att. 3 at 58-62).

[5] Petitioner's son, Michael Villar, testified that the first time that Petitioner told him that he wanted him to kill J.N.H. and her family was when he was visiting with his father alone at the jail. (Doc. 25, Att. 2 at 134-35). Michael Villar testified that his father came up with the idea and that they "talked about going over there and pouring gas around the house and setting it on fire with everybody in it." (Id.). He stated that, when the conversation first occurred, he "couldn't believe it." (Id.). In an effort to keep his father calm, he told him that he would "handle it." (Id.).

Therefore, with respect to habeas claim 1, Petitioner has failed to establish under the "contrary to" clause of § 2254(d)(1) that the Alabama Court of Criminal Appeals applied a rule that contradicts the governing law set forth in Supreme Court case law or that the court decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts. Likewise, Petitioner has failed to establish under the "unreasonable application" clause that the state court, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case. To the contrary, the decision of the Alabama Court of Criminal Appeals regarding Petitioner's insufficiency of the evidence claim is completely consistent with the principles outlined in <u>Jackson</u>, 443 U.S. 307, 324 (1979). Thus, Petitioner has not established that he is entitled to relief under § 2254(d)(1).

In addition, Petitioner has failed to establish entitlement to relief under § 2254(d)(2) by showing that the decision of the Alabama Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court must presume as correct the determinations of all factual issues made by the state court. 28 U.S.C. § 2254(e). Petitioner has not rebutted that presumption of correctness by clear and convincing evidence.

Accordingly, Petitioner is not entitled to habeas relief on the basis of claim 1, and that claim is, therefore, due to be denied.

**II. <u>Claim 2</u>.**

Petitioner next argues in his habeas petition that he is entitled to relief under § 2254 because his due process rights were violated by: (a) the improper consolidation of six charges at his trial; and (b) by the improper admission of a "missing persons poster" into evidence. While it appears that Petitioner failed to fully exhaust these claims in the state courts,[6] under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." <u>See also</u> <u>Thompson v. Secretary for Dep't of Corrs.</u>, 517 F.3d 1279, 1283 (11th Cir. 2008) ("We may, however, deny Petitioner's petition for

---

[6] The exhaustion doctrine requires that a petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). In Alabama, the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to the Alabama Court of Criminal Appeals, and an application for discretionary review by the Alabama Supreme Court. <u>See</u> <u>Ala. R. App. P.</u> 4, 39, 40. A review of the record of Petitioner's state court proceedings shows that Petitioner did raise each of these issues on direct appeal; however, he failed to raise them in his application for rehearing or in his petition for a writ of certiorari. (Doc. 7, Att. 1; Doc. 25, Att. 6; Doc. 25, Att. 7). Therefore, his due process claims were not fully exhausted and are now procedurally defaulted.

habeas relief on the merits regardless of his failure to exhaust the claim in state court.") (citing 28 U.S.C. § 2254(b)(2)). Having considered both of these claims *de novo*, the Court finds them to be without merit.

## A. **Improper Consolidation of Charges**.

In his petition, Petitioner argues that he is entitled to relief under § 2254 because his due process rights were violated by the improper consolidation of all six charges at his trial, those being, second degree rape, second degree sodomy, enticing a minor to enter a vehicle, intimidating a witness, criminal solicitation to commit murder, and second degree escape. (Doc. 1 at 20; Doc. 27 at 105). Petitioner presented this argument on direct appeal, and the Alabama Court of Criminal Appeals affirmed his convictions, stating:

> Next, Villar argues that the trial court erred when it consolidated all six charges against him for a single trial.
>
> Rule 13. 3, Ala. R. Crim. P., allows charges to be consolidated for trial if they (1) are of the same or similar character, or (2) are based on the same conduct or otherwise connected in their commission, or (3) are alleged to have been part of a common plan or scheme. Here, the State offered evidence that the appellant committed numerous offenses against the victim. The offenses were of similar character because all of them were sexual offenses or intimidation tactics to prevent J.N.H. or her family from prosecuting him for sexual offenses.
>
> "A trial court's decision to consolidate is entitled to deference on appeal and will not

be overturned absent a showing of abuse of discretion." <u>Gibbs v. State</u>, 695 So. 2d 649, 652 (Ala. Crim. App. 1996). Our examination of the evidence in this case convinces us that the consolidation of these offenses was correct.

(Doc. 7, Att. 1 at 7).

Having considered this issue, *de novo*, the Court is satisfied that Petitioner has failed to show that he is entitled to habeas relief on this basis.

The propriety of a consolidation rests within the sound discretion of the state trial judge. The simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate.

<u>Tribbitt v. Wainwright</u>, 540 F.2d 840, 841 (5th Cir. 1976).[7]

In <u>McLeod v. Attorney General, Florida</u>, 2009 WL 3242015, *7 (M.D. Fla. 2009), the court recently stated:

The issue of joinder of offenses is a state law matter to be decided within the broad discretion of the state trial court. The only issue before this Court in a federal habeas proceeding is not whether the trial court was right or wrong, but whether the trial of separate offenses together actually rendered the state trial unfair such that it violated a defendant's federal constitutional rights of due process. To prevail on this claim, a petitioner must show more than the potential for prejudice. He must show actual prejudice

---

[7] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981).

> resulting from the events of the trial.
> <u>Tribbitt v. Wainwright</u>, 540 F.2d 840 (5th Cir.
> 1976); <u>see also</u> <u>Hernandez v. Conway</u>, 485 F.
> Supp. 2d 266 (W.D.N.Y. 2007).

<u>McLeod v. Attorney General, Florida</u>, 2009 WL 3242015, *7 (M.D. Fla. 2009).

In the present action, the charges of second degree rape, second degree sodomy, enticing a minor to enter a vehicle, intimidating a witness, and criminal solicitation to commit murder are obviously related to each other as they were committed by Petitioner against the victim, J.N.H. Thus, there was no error in their consolidation.

Further, because Petitioner was planning the murders of J.N.H. and her family while he was incarcerated at the Mobile Metro Jail, his alleged escape attempt was arguably related to his plan to harm J.N.H. and her family. In any event, if each of the six charges had been tried separately, evidence of the alleged escape attempt would have been admissible in the trial of the other charges as evidence of consciousness of guilt, and evidence of the other charges would have been admissible in the trial of the escape charge as motive for the escape. <u>See</u>, <u>e.g.</u>, <u>Brown v. State</u>, 821 So. 2d 219, 225 (Ala. Crim. App. 2000) (evidence of defendant's escape from custody was properly admitted as evidence of consciousness of guilt); <u>Barnes v. State</u>, 571 So. 2d 372, 374 (Ala. Crim. App. 1990) (Evidence of collateral criminal activity is admissible if it relates to the defendant's motive and intent to

commit the crime presently charged.).  Thus, there was no error in
the consolidation of all six charges at trial.

Moreover, even assuming error, Petitioner has failed to show
that the consolidation of the six charges against him rendered his
trial fundamentally unfair and violative of due process.  Thus, he
is not entitled to habeas relief on the basis of this claim.

### B. **Improper Admission of "Missing Persons Poster"**.

Next, Petitioner argues that he is entitled to relief under §
2254 because his due process rights were violated by the improper
admission of a 'missing persons poster' into evidence.  (Doc. 1 at
9).  Petitioner presented this argument on direct appeal, and the
Alabama Court of Criminal Appeals affirmed his convictions,
stating:

> Finally, Villar argues that the trial court
> erred when it allowed the State to admit
> evidence of a "missing person's poster"
> prepared by J.N.H.'s mother when it should
> have been precluded pursuant to Rule 403, Ala.
> R. Evid.
>
> The record reveals that, J.N.H.'s mother
> identified a flyer she had printed at Kinko's
> upon learning of her daughter's disappearance.
> The flyer contained a recent photograph of
> J.N.H., and copies of it had been nailed to
> utility poles in the neighborhood and had been
> posted in local businesses, J.N.H.'s school,
> and at the post office.  The same flyer was
> presented to Villar by Lieutenant Victor
> Vaughn when he asked Villar if he knew the
> missing girl.  Although Villar initially
> denied that he knew the girl, he later
> admitted that he may have seen her before and
> offered his cooperation to law enforcement
> officers.  Thus, because the poster was

21

relevant to the investigation of J.N.H.'s
disappearance, and to Villar's role in
J.N.H.'s disappearance, the poster was
properly admitted as probative evidence.
Villar has failed to show that the admission
of such probative evidence was outweighed by
any prejudicial effect on his defense. The
balancing test of Rule 403, Ala. R. Evid., is
within the trial judge's discretion and will
not be reversed in the absence of an abuse of
discretion. <u>See</u> <u>Sanders v. State</u>, 512 So. 2d
809 (Ala. Crim. App. 1985).

(Doc. 7, Att. 1 at 7-8).

In reviewing an evidentiary determination of a state trial
court, the federal court will "not sit as a 'super' state supreme
court." <u>Shaw v. Boney</u>, 695 F.2d 528, 530 (11th Cir. 1983)
(citations omitted). In <u>Shaw</u>, the Eleventh Circuit explained:

Unlike a state appellate court, we are not
free to grant the petitioner relief simply
because we believe the trial judge has erred.
The scope of our review is severely
restricted. Indeed, the general rule is that
a federal court will not review a trial
court's actions with respect to the admission
of evidence. [Citations omitted]. A state
evidentiary violation in and of itself does
not support habeas corpus relief. [Citations
omitted]. Before such relief may be granted,
the violation must rise to the level of a
denial of "fundamental fairness." [Citations
omitted].

In the context of state evidentiary rulings,
the established standard of fundamental
fairness is that habeas relief will be granted
only if the state trial error was "material in
the sense of a crucial, critical, highly
significant factor." [Citations omitted].
Moreover, application of this standard has
been notably one-sided, consistent with the
reluctance of federal courts to second-guess
state evidentiary rulings. This court has

22

> established a well-documented resistance to
> granting relief when a habeas petition alleges
> a federal claim based merely on a state
> evidentiary ruling.

Id. Thus, this claim will be reviewed only to determine whether the alleged error "render[ed] the entire trial fundamentally unfair." Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).

Having considered this claim *de novo*, the Court finds that the "missing persons poster" made by J.N.H.'s mother was admissible for the precise reasons cited by the Alabama Court of Criminal Appeals. As discussed above, the record shows that J.N.H.'s mother made the poster the day that her twelve-year-old daughter went missing, using a school photograph of the child. (Doc. 25, Att. 2 at 89). In the days following J.N.H.'s disappearance, the police questioned Petitioner at his home and showed him the poster. (Id. at 101-02). Petitioner denied knowing J.N.H., although he was, in fact, hiding her at a trailer near Dauphin Island at the time. (Id.; Doc. 25, Att. 3 at 37, 54). Eleven days after she was reported missing by her mother, J.N.H. was found in a hotel room in Louisiana with Petitioner. (Doc. 25, Att. 3 at 47; Doc. 25, Att. 2 at 104-10). Thus, as the Alabama Court of Criminal Appeals found, the poster was relevant as part of the police investigation into J.N.H.'s disappearance and Petitioner's involvement with the missing child.

Moreover, even assuming, *arguendo*, that the poster should not have been admitted, Petitioner has failed to show that any error in

admitting the poster was "material in the sense of a crucial, critical, highly significant factor" in the trial, and that it "render[ed] the entire trial fundamentally unfair." Shaw, 695 F.2d at 530; Carrizales, 699 F.2d at 1055. Therefore, Petitioner is not entitled to habeas relief on the basis of this claim.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000) ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial

24

showing of the denial of a constitutional right, a demonstration that, under <u>Barefoot [v. Estelle</u>, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); <u>accord</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

None of Petitioner's claims warrant the issuance of a Certificate of Appealability. The recommendation that the claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of Petitioner's claims on the record presented. It is thus recommended that the Court deny any request for Certificate of Appealability.

## CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge is of the opinion that Petitioner's rights were not violated and that his request for habeas corpus relief should be denied. Further, the undersigned Magistrate Judge is of the opinion that Petitioner is not entitled to issuance of a Certificate of Appealability. It is so recommended.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this **21st** day of **April, 2010.**

_____**/s/SONJA F. BIVINS**_____
**UNITED STATES MAGISTRATE JUDGE**

26

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.    *Objection*.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[8] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

---

[8] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

2.    ***Transcript (applicable Where Proceedings Tape Recorded)***.
Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the
Magistrate Judge finds that the tapes and original records in this
case are adequate for purposes of review.  Any party planning to
object to this recommendation, but unable to pay the fee for a
transcript, is advised that a judicial determination that
transcription is necessary is required before the United States
will pay the cost of the transcript.